# United States District Court
# Central District of California

| | |
|---|---|
| HARMAN INTERNATIONAL INDUSTRIES, INC, | Case No. 2:17-cv-06650-ODW (FFMx) |
| Plaintiff, | **ORDER GRANTING PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT [18]** |
| v. | |
| PRO SOUND GEAR, INC. dba PROSOUNDGEAR.COM; PRO AUDIO DISTRIBUTION; PRO AUDIO WHOLESALE; AUTO SHIPPING SOLUTIONS, INC., | |
| Defendant(s). | |

## I. INTRODUCTION

On September 8, 2017, Plaintiff Harman International Industries, Inc. ("Harman") filed this action against Defendants Pro Sound Gear, Inc., Pro Audio Wholesale, and Auto Shipping Solutions, Inc.[1] (collectively, "Defendants" or "Pro Sound") for trademark infringement, trademark counterfeiting, and violation of California Business & Professional Code section 17200. (Compl., ECF No. 1.) On December 19, 2017, the Clerk entered default against Defendants. (ECF No. 17.) On March 7, 2018 Harman moved for entry of default judgment. (Mot., ECF No. 18.) For

---

[1] On December 18, 2017, Harman dismissed Defendant Pro Audio Distribution from this lawsuit. (ECF No. 16.)

the reasons discussed below, the Court **GRANTS** the Motion.[2]

## II. FACTUAL BACKGROUND

Harman brings three claims against Pro Sound: (1) false designation of origin under 15 U.S.C. § 1125(a), (2) trademark counterfeiting under 15 U.S.C. § 1114(1)(b), and (3) unfair trade practices under California Business and Professions Code sections 17200 et seq. (*See generally* Compl.) Harman asserts twenty-six valid, registered trademarks (the "Harman Marks"), which remain in full force and effect, the majority of which are incontestable, and through which Harman has established recognition as being associated with its products. (Compl. ¶¶ 11–18.)

Pro Sound is not an authorized dealer of Harman products, and Harman's authorized dealers are prohibited by contract to sell Harman products bearing the Harman Marks to unauthorized dealers. (Compl. ¶¶ 20–21; Declaration of Helen E. Omapas ("Omapas Decl.") ¶ 7, ECF No. 18-2.) Pro Sound advertised and sold Harman products bearing, at a minimum, the DBX, JBL, and SOUNDCRAFT marks, through its website www.prosoundgear.com (the "Pro Sound Website") at discounted prices, with serial numbers that were removed and/or altered, and without a Harman consumer warranty. (Compl. ¶¶ 22–25; Omapas Decl. ¶¶ 8–10, Exs. C–D.) Harman alleges that the removal and/or altering of the serial numbers and/or packaging of Harman products and selling Harman products without a Harman consumer warranty has caused, and likely will continue to cause, confusion among consumers regarding the origin and sponsorship by Harman of its products sold by Pro Sound. (Mot. 2.)

## III. LEGAL STANDARD

Rule of Civil Procedure 55(b) authorizes a district court to enter a default judgment after the Clerk enters a default under Rule 55(a). Before a court can enter a default judgment against a defendant, the plaintiff must satisfy the procedural requirements set forth in Federal Rules of Civil Procedure 54(c) and 55, as well as Local

---

[2] After carefully considering the papers filed in support of the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

Rule 55-1 and 55-2. Local Rule 55-1 requires the movant to submit a declaration establishing: (1) when and against what party the default was entered; (2) the pleading to which the default was entered; (3) whether the defaulting party is an infant or incompetent person; (4) that the Servicemembers Civil Relief Act, 50 U.S.C. § 3931, does not apply; and (5) that the notice has been served on the defaulting party, if required under Rule 55(b)(2). C.D. Cal. L.R. 55-1.

If these procedural requirements are satisfied, a district court has discretion whether to grant a default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In exercising its discretion, a court must consider several factors (the "*Eitel* Factors"), including: (1) the possibility of prejudice to plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether the defendant's default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). Upon entry of default, the defendant's liability generally is conclusively established, and the court accepts the well-pleaded factual allegations in the complaint as true. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–19 (9th Cir. 1987) (per curiam) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).

### IV. DISCUSSION

#### A. Procedural Requirements

Harman satisfied the procedural requirements. The Clerk entered default against Pro Sound on December 19, 2017. (ECF No. 17.) Pro Sound is not a minor, an incompetent person, in military service, or otherwise exempted under the Soldiers' and Sailors' Civil Relief Act of 1940. (*See* Declaration of Sherrie M. Flynn ("Flynn Decl.") ¶¶ 1–3, ECF No. 18-3.) Harman served Pro Sound with notice of this Motion on March 7, 2018. (Flynn Decl. ¶ 10.) Thus Harman complied with the procedural prerequisites for entry of default judgment. *See PepsiCo Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d

1172, 1175 (C.D. Cal. 2002) (finding that the procedural requirements of Rule 55 and Local Rule 55-1 have been met where plaintiffs address each required factor in their application for default judgment).

## B. The *Eitel* Factors

### 1. Prejudice

The first *Eitel* factor asks whether the plaintiff will suffer prejudice if a default judgment is not entered. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. When a defendant has failed to appear and defend the claims, a plaintiff will be without recourse and suffer prejudice unless default judgment is entered. Accordingly, this factor weighs in favor of granting default judgment.

### 2. Sufficiently Pleaded and Meritorious Claims

The second and third *Eitel* factors "require that a plaintiff 'state a claim on which [it] may recover.'" *PepsiCo*, 238 F. Supp. 2d. at 1175 (citations omitted); *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003).

Harman has sufficiently pleaded meritorious claims of trademark infringement for false designation of origin, trademark counterfeiting, and unfair trade practices under California Business & Professional Code section 17200.

*Trademark Infringement—False Designation of Origin*

In order to prevail on a trademark infringement, false designation of origin claim under the Lanham Act, Harman must establish two elements: (1) ownership of a valid, protectable trademark; and (2) Pro Sound's use of the mark is likely to cause confusion. Lanham Act § 43(a), 15 U.S.C. § 1125(a); *see also Southern California Darts Ass'n v. Zaffina*, 762 F.3d 921, 929 (9th Cir. 2014). The first element is comprised of two sub-parts: (a) the mark must be protectable; and (b) plaintiff must own the mark. *Zaffina*, 762 F.3d at 929.

#### a. Ownership of a Valid, Protectable Mark

Section 33 of the Lanham Act provides, in pertinent part:

> Any registration . . . of a mark registered on the principal

> register . . . and owned by a party to an action shall be admissible in evidence and shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce or in connection with the goods or services specified in the registration[.] To the extent that the right to use the registered mark has become incontestable . . . the registration shall be conclusive evidence of the validity of the registered mark, of the registrant's ownership of the mark, and the registrant's exclusive right to use the registered mark in commerce.

15 U.S.C. § 1115(a).

Harman has sufficiently alleged that it is the owner of registered and/or incontestable trademarks for its AKG, AMX, BSS, CROWN, DBX, DIGITECH, JBL, LEXICON, MARTIN, SOUNDCRAFT, STUDER and SVSI products. (See Compl. ¶¶ 11–18, Ex. 1; Omapas Decl. ¶¶ 4–5, Exs. A & B.) Pro Sound has not asserted any equitable or legal defenses to Harman's ownership or the validity of the Harman Marks. Thus, the Harman Marks are deemed valid, protectable trademarks.

### b. Likelihood of Confusion

"The test of likelihood of confusion is whether a 'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks." *Dreamwerks Prod. Grp., Inc. v. SKG Studio, dba Dreamworks SKG*, 142 F.3d 1127, 1129 (9th Cir. 1998).

Courts generally apply the first sale doctrine to the resale of trademarked goods. *See Sebastian Int'l, Inc. v. Longs Drug Stores Corp.*, 53 F.3d 1073, 1076 (9th Cir. 1995). As a general rule, this doctrine limits the trademark owner's right under the Lanham Act to control distribution of its own products after the product's first sale. *Enesco Corp. v. Price/Costco Inc.,* 146 F.3d 1083, 1085 (9th Cir. 1998). Under this doctrine, a purchaser may "stock, display, and resell a producer's product under the producer's trademark" without infringing on the producer's trademark. *Sebastian Int'l*, 53 F.3d at

1076.  "After the first sale, however, the trademark holder may establish infringement only if he demonstrates that the goods are materially different."  *Grateful Palate, Inc. v. Joshua Tree Imports, LLC*, 220 F. App'x 635, 637 (9th Cir. 2007); *see also SoftMan Prods. Co., LLC v. Adobe Sys., Inc.*, 171 F. Supp. 2d 1075, 1092 (C.D. Cal. 2001).  The resale of a materially different product constitutes trademark infringement because the product is not genuine and may cause confusion regarding the product's source, quality, or sponsorship.  *See Enesco*, 146 F.3d at 1087; *see also Davidoff & CIE, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1302 (11th Cir. 2001) ("[M]aterially different products that have the same trademark may confuse consumers and erode consumer goodwill toward the mark.").  "A guiding principle in evaluating whether a difference between two products bearing the same trademark is material is whether the difference confuses consumers and impinges on the trademark holder's goodwill."  *Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC*, 562 F.3d 1067, 1073 (10th Cir. 2009) (alteration and internal quotation marks omitted); *see also Davidoff*, 263 F.3d at 1302 ("A material difference is one that consumers consider relevant to a decision about whether to purchase a product."); *Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 303 (3d Cir. 1998) (distinguishing a material difference from a difference in which the customer still "gets precisely what they believed they were purchasing.").

Although Pro Sound is not an authorized Harman dealer, it sells products bearing the Harman Marks through the Pro Sound Website.  (Compl. ¶¶ 22–25; Omapas Decl. ¶¶ 7, 11.)  Harman alleges that, within the past year, Pro Sound has sold Harman products bearing, at a minimum the DBX, JBL, and SOUNDCRAFT marks that Pro Sound advertised as being genuine Harman products.  (Compl. ¶ 25.)  Harman asserts that Pro Sound has been selling Harman products with serial numbers that have been removed and/or altered.  (Omapas Decl., Exs. C & D.)  Removal and/or altering of the serial numbers on the Harman products may make a consumer believe the product has been tampered with and degrades the appearance and value of the product.  *Davidoff*, 263 F.3d at 1302–03 (deferring to the district court's finding that etching off of batch

codes degrades the value of the product and creates a likelihood of confusion). The removal and/or altering of the serial numbers, therefore, materially alters the Harman products.

In addition, Harman asserts that all warranties that a consumer would have received had the product been purchased from an authorized Harman dealer were void because the serial numbers on the Harman products were removed and/or altered. (Compl. ¶ 28.) This firmly establishes that Pro Sound was selling Harman products without authentic Harman consumer warranties. "[T]he fact that a manufacturer's warranty comes with Plaintiff's sale but not Defendant's resale of [the] products is likely to confuse consumers." *HM Elecs., Inc. v. R.F. Techs., Inc.*, No. 12-CV-2884-MMA (WMC), 2013 WL 12074966, *3 (S.D. Cal. Oct. 3, 2013). Further, the fact that Pro Sound does not disclose that its products do not come with the Harman consumer warranty may exacerbate the potential for customer confusion. (*See generally* Compl.; Omapas Decl., Exs. C–E); *see Beltronics*, 562 F.3d at 1074 ("So long as resellers of materially different products take the necessary steps to adequately alleviate this confusion and prevent injury to the trademark's goodwill—by, for example, sufficiently disclosing that the product differs from the originally sold product—those differences will be unlikely to trigger . . . liability . . . ."); *see, e.g.*, *Enesco*, 146 F.3d at 1086 (holding a purchaser could repackage and sell trademarked figurines as long as the purchaser disclosed to the public that it repackaged the original product). Thus, Harman has sufficiently established that the sale by Pro Sound of Harman products with removed and/or altered serial numbers, and without the Harman consumer warranty, has caused confusion among consumers regarding the Harman products they are purchasing and Harman's sponsorship of Pro Sound's sale of Harman products.

For the foregoing reasons, the Court finds that Harman has stated a false designation of origin claim under the Lanham Act.

***Trademark Counterfeiting***

Section 1114 of the Lanham Act established a cause of action for trademark

counterfeiting by prohibiting the use of "any reproduction, counterfeit copy, or colorable imitation of a registered mark in connection with the sale . . . of any goods . . . [where] such use is likely to cause confusion . . . or deceive." 15 U.S.C. § 1114(a)(1). The object of section 1114 is broader than the prohibition of counterfeiting and was intended "to protect consumers against deceptive designations of the origin of goods," not just to prevent the duplication of trademarks. *Int'l Order of Job's Daughters v. Lindeburg & Co.*, 633 F.2d 912, 918 (9th Cir. 1980), *cert. denied*, 452 U.S. 941 (1981). "In fact, the public is more likely to be deceived by an original mark because it serves as a perfect imitation. In short, the distinction between using a duplication versus using an original has no relevance to the purposes of trademark law." *Westinghouse Elec. Corp. v. Gen. Circuit Breaker & Elec. Supply, Inc.*, 106 F.3d 894, 900 (9th Cir. 1997); *see also El Greco Leather Prod. Co. v. Shoe World, Inc.*, 806 F.2d 392, 296 (2d Cir. 1968) (holding shoe manufacturer liable for selling shoes bearing the genuine Candie's trademark after its contract with Candie's had been cancelled), *cert. denied*, 484 U.S. 817 (1987). "We can see no difference, so far as the objectives of section 1114(1)(a) are concerned, between [unauthorized use of plaintiff's original trademark] and making a reproduction of [plaintiff's] trademark." *Id.* (citing *General Elec. Co. v. Speicher*, 877 F.2d 531 (7th Cir. 1989)).

Although Harman does not assert Pro Sound has sold imitation or duplicate copies of the Harman Marks, in the literal sense, Harman does assert Pro Sound's unauthorized use of the DBX, JBL, and SOUNDCRAFT marks on products that have removed and/or altered serial numbers and sold without a Harman consumer warranty cause consumer confusion. (Compl. ¶¶ 23–25; Omapas Decl. ¶¶ 7, 9–11.) The Court determined that Harman sufficiently established a likelihood of consumer confusion under a false designation of origin claim, so it necessarily follows that Harman has also established likelihood of consumer confusion under its trademark counterfeiting claim. Because "the distinction between using a duplication verses using an original has no relevance[,]" where, as here, there is deceptive practices so as to create consumer

confusion, the product itself becomes a "counterfeit." *Westinghouse*, 106 F.3d at 899–900.

For the foregoing reasons, the Court finds that Harman has stated a trademark counterfeiting claim under the Lanham Act.

***Unfair Trade Practices***

California Business and Professions Code § 17200 prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising . . . ." Cal. Bus. & Prof. Code § 17200. In order to prevail on a claim under section 17200, a plaintiff must prove "either an (1) unlawful, unfair, or fraudulent business act or practice, or (2) unfair, deceptive, untrue or misleading advertising." *Lippitt v. Raymond James Fin. Servs.*, Inc., 340 F.3d 1033, 1043 (9th Cir. 2003).

Harman has sufficiently pleaded that Pro Sound's actions in removing and/or altering the serial numbers and/or packaging of products containing the Harman Marks is unfair and deceptive, in violation of section 17200. (Compl. ¶¶ 22–23, 47–51; Omapas Decl. ¶¶ 9–10, Exs. C–D; *see also* Mot. 4–13.) Thus, the Court finds that Harman has stated an Unfair Trade Practices claim under the California Business and Professions Code § 17200.

**3. Amount at Stake**

The fourth *Eitel* factor balances "the amount of money at stake in relation to the seriousness of the [d]efendant's conduct." *PepsiCo*, 238 F. Supp. 2d at 1176. "This determination requires a comparison of the recovery sought and the nature of defendant's conduct to determine whether the remedy is appropriate." *United States v. Broaster Kitchen, Inc.*, No. 2:14-cv-09421-MMM, 2015 WL 4545360, *6 (C.D. Cal. May 27, 2015).

Harman requests the statutory maximum of $200,000.00, for damages, for each of the three marks. (Mot. 3.) Harman does not submit evidence in connection with this Motion that addresses the expenses saved and profits reaped by Pro Sound, or in the alternative, the revenues lost by Harman. Here, Harman merely alleges it was deprived

of substantial sales and the value of the Harman Marks. (Compl. ¶ 32.) However, Harman was deprived of the opportunity to review Pro Sound's records due to Pro Sound's failure to appear or respond to Harman's Complaint or Motion for Default Judgment. "Statutory damages are appropriate in default judgment cases because the information needed to prove actual damages is within the infringers' control and is not disclosed." *Microsoft Corp. v. Nop*, 549 F. Supp. 2d 1233, 1238 (E.D. Cal. 2008). Therefore, although Harman seeks maximum statutory damages, this factor weighs in favor of the entry of default judgment.

Harman also seeks non-monetary relief in the form of injunctive relief from the continued use the Harman Marks by Pro Sound. That this request for relief is non-monetary favors granting default judgment. *PepsiCo*, 238 F. Supp. 2d at 1177.

**4.     Dispute as to Material Facts**

The next *Eitel* factor considers the possibility that material facts are in dispute. *Eitel*, 782 F.2d at 1471–72. Harman has adequately alleged its claims for trademark infringement and violation of the California Business & Professional Code § 17200 by describing the products sold on the Pro Sound Website. Pro Sound failed to respond in any way to Harman's Compliant and forfeited any challenge to the material facts alleged in Harman's pleadings. *See PepsiCo*, 238 F. Supp. 2d at 1177 ("Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages."). Therefore, "no factual disputes exist that would preclude the entry of default judgment." *Vogel*, 992 F. Supp. 2d at 1013. Accordingly, this factor weighs in favor of entry to default judgment.

**5.     Default Due to Excusable Neglect**

The sixth *Eitel* factor considers whether a defendant's default may have resulted from excusable neglect. *Eitel*, 782 F.2d at 1471–72. There is no indication that default was entered due to Pro Sound's excusable neglect. Pro Sound was properly served with the Summons and Complaint (Flynn Decl., Ex. 1), and submitted Waivers of Service of Summons (ECF Nos. 11–13), yet failed to show cause why a default judgment should

not be entered against it. Accordingly, this factor weighs in favor of entry of default judgment.

///

### 6. Policy of Deciding Cases on the Merits

"Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. While this factor will always disfavor the entry of judgment, it alone does not outweigh the other factors that clearly favor entry of judgment. *PepsiCo*, 238 F. Supp. 2d at 1177. The Court thus concludes that the *Eitel* factors support the Court's entry of a default judgment.

## C. Relief

"The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). Harman seeks damages and injunctive relief under the Lanham Act. (Mot. 6–9, 11–12.)

### 1. Damages

Under 15 U.S.C. § 1117(c), a court may award statutory damages between $1,000 and $200,000 per counterfeit mark per type of goods or services sold or offered for sale in the case of trademark infringement. The statutory damage award should be "low enough to bear some rational relationship to the amount of damage incurred . . . but substantial enough to deter similarly situated businesses from engaging in similar conduct in the future." *Rolex Watch U.S.A. v. Zeotec Diamonds, Inc.*, No. CV 02–01089 GAF (VBKx), 2003 WL 23705746, *5 (C.D. Cal. Mar. 7, 2003). In determining what amount of statutory damages to award, the Ninth Circuit has repeatedly expressed this deterrence policy, emphasizing that the damages award should make "deliberate trademark infringement unprofitable." *Maier Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117, 123 (9th Cir. 1968); *see also Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1406 (9th Cir. 1993); *Playboy Enters., Inc. v. Baccarat Clothing Co., Inc.*, 692 F.2d 1272, 1275 (9th Cir. 1982). However, there must also be a "plausible

relationship" between the damages sought by plaintiff and the defendant's infringing conduct. *See Beachbody, LLC v. Johannes*, No. 11–cv–1148 PSG (RZx), 2011 WL 3565226, at *3 (C.D. Cal. Aug. 12, 2011) (finding that plaintiff's request for $2,150,000 in statutory damages was unreasonable where there were no figures confirming defendant's profits). "A court has wide discretion to determine the amount of statutory damages between the statutory maxima and minima." *Microsoft Corp. v. Coppola*, No. C 06–06701 WHA, 2007 WL 1520964, *4 (N.D. Cal. May 24, 2007) (citing *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir.1984)).

Harman requests the statutory maximum of $200,000 for each of the three counterfeit marks (i.e., DBX, JBL, and SOUNDCRAFT), for a total of $600,000. (Mot. 11.) To justify this award, Harman notes that it was unable to provide evidence of the monetary harm it may have suffered as a result of Pro Sound's infringing activities because Pro Sound has not participated in this litigation, making discovery of the extent of Pro Sound's operations and the revenues it gained from the illegal sale of Harman's product unavailable.

This Court has previously noted:

> A default judgment situation like this one places both the plaintiff and the Court in the unenviable position of having to assign a value to a defendant's wrongful conduct without the aid of any discovery establishing the extent and full effects of that conduct. But Congress has implicitly recognized that dilemma by empowering the Court to award damages unconnected with actual harm. The Court must therefore fall back on the Ninth Circuit's punitive and deterrence policies undergirding a statutory-damages award.

*Curtis v. Shinsachi Pharmaceutical Inc.*, 45 F. Supp. 3d 1190, 1203 (C.D. Cal. 2014). Just as in *Curtis*, here Pro Sound's conduct "smacks of bad faith." *Id.* Pro Sound knowingly sold Harman products as unauthorized dealers. (Mot. 12.) Pro Sound proceeded to use the Harman Marks on its website and sold Harman products with altered and/or removed serial numbers, thereby voiding Harman's consumer warranty.

(*Id.*) The Court cannot determine the full extent of the harm stemming from Pro Sound's conduct, but its actions sound in bad faith.

The Court concludes that Harman is entitled to $100,000 for each of the three counterfeit marks, for a total of $300,000. *See Microsoft Corp. v. Nop*, 549 F. Supp. at 1238 (after default, awarding statutory damages of $100,000 for each of seven trademarks at issue and $30,000 for each of nine copyrights at issue, for a total of $710,000); *Curtis*, 45 F. Supp. 3d at 1204 (holding that plaintiff's request of $100,000 per infringement was "appropriately tailored to the particular circumstances known about Defendants' conduct"); *Kirakosian v. J&L Sunset Wholesale & Tobacco*, No. 216-cv-06097-CAS (PLAx), 2017 WL 4022365, at *8 (C.D. Cal. Sept. 11, 2017) (finding "that $100,000 in statutory damages is reasonably proportionate to the willful harm that defendant has caused and will deter future infringement.").

### 2. Injunctive Relief

Harman also seeks a permanent injunction barring Pro Sound's use of its trademarks. (Mot. 6.) Specially, Harman requests that the Court permanently enjoin Pro Sound, including all partners, offices, agents, servants, employees, attorneys, subsidiaries, and successors-in-interest from: (a) using the Harman Marks or any mark that is confusingly similar to the Harman Marks, whether alone or in combination with any other words or symbols; (b) acquiring, or taking any steps to acquire, any Harman products containing the Harman Marks including, but not limited to, AKG, AMX, BSS, VROWN, DBX, DIGITECH, JBL, LEXICON, MARTIN, SOUNDCRAFT, STUDER, and SVSI marks, in violation of any agreement that Harman may have with its authorized dealers, or through any other improper or unlawful channels, (c) advertising, selling, listing, promoting, displaying, offering for sale or shipping, or taking any steps to advertise, sell, list, promote, display, offer for sale or ship, any Harman product containing the Harman Marks including, but not limited to, AKG, AMX, BSS, VROWN, DBX, DIGITECH, JBL, LEXICON, MARTIN, SOUNDCRAFT, STUDER, and SVSI products; (d) inducing, assisting or abetting any other person or entity in

engaging in or performing any of the activities proscribed in the paragraphs above: and (e) engaging in any further infringement of Harman marks.

The Lanham Act gives the Court the power to grant injunctions to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark office. 15 U.S.C. § 1116(a). "Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1998). A court may grant a permanent injunction if the plaintiff satisfies a four-factor test. *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 392–93 (2006). Specifically, a plaintiff seeking a permanent injunction must demonstrate that: (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) "considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted"; and (4) it is the public's interest to issue the injunction. *eBay*, 547 U.S. at 391.

"[W]hen a plaintiff establishes in a trademark infringement or unfair competition action a likelihood of confusion, it is generally presumed that the plaintiff will suffer irreparable harm if an injunction is not granted." *Otter Prod., LLC v. Berrios*, No. 13–cv–4384–RSWL–AGRX, 2013 WL 5575070, *11 (C.D. Cal. Oct. 10, 2013). Furthermore, "[e]vidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm." *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 841 (9th Cir. 2001). Harman's pleadings have demonstrated a likelihood of confusion as to the origin of the infringing products, and thus a potential loss of prospective customers, as well as harm to the goodwill of the Harman products. (Compl. 30–33, 38; Omapas Decl. ¶ 11–17.) Therefore, the Court finds that Harman will be irreparably harmed by Pro Sound's continued use and infringement of Harman's marks.

Harman satisfies the second element concerning inadequate legal remedy. "Damage to reputation and loss of customers are intangible harms not adequately

compensable through monetary damages." *Car–Freshner Corp. v. Valio, LLC*, No. 2:14–cv–01471–RFB–GWF, 2016 WL 7246073, *8 (D. Nev. Dec. 15, 2016). Harman alleges that unless enjoined, Pro Sound will likely continue to infringe upon Harman's Marks. (Mot. 7–8.) Although, post-*eBay*, a court may no longer presume irreparable injury from the bare fact of liability in a trademark or trade dress case, the injury caused by the presence of infringing products in the market—such as lost profits and customers, as well as damage to goodwill and business reputation—will often constitute irreparable injury. *Sennheiser Elec. Corp. v. Eichler*, No. CV 12-10809 MMM (PLAx), 2013 WL 3811775, at *10 (C.D. Cal July 19, 2013) (citations omitted). Harman adequately alleges that Pro Sound used and will continue to use counterfeit products. (Omapas Decl. 4–5; *see generally* Compl.) Furthermore, Harman contends that this use will create consumer confusion and damage to their reputation and goodwill. (Compl. ¶ 32); *See Wecosign, Inc. v. IFT Holdings, Inc.*, 845 F. Supp. 2d 1072, 1084 (C.D. Cal. 2012) ("If an injunction were not granted, [p]laintiff would suffer irreparable injury from the ongoing damages to its goodwill and diversion of customers to counterfeit services.").

Moreover, the balance of hardships favors Harman, as without an injunction Harman will lose profits, goodwill, and rights to control the quality of its products, whereas an injunction will only proscribe Pro Sound's infringing activities. *Wescosign, Inc. v. IFG Holdings*, Inc., 845 F. Supp. 2d 1072, 1084 (C.D. Cal. Jan. 23, 2012). There is no indication that Pro Sound will suffer hardship if a permanent injunction is entered. Rather, an injunction will merely assure Pro Sound's compliance with the Lanham Act and other laws governing trademarks. *See Sennheiser*, 2013 WL 3811775, at *11.

Lastly, an injunction is in the interest of the public because "[t]he public has an interest in avoiding confusion between two companies' products." *Internet Specialties West, Inc. v. Milon–DiGiorgio Enters., Inc.*, 559 F.3d 985, 993 (9th Cir. 2009). "Where defendant's concurrent use of plaintiff's trademark without authorization is likely to cause confusion, the public interest is damaged by the defendant's use." *AT&T Corp.*

*v. Vision One Sec. Sys.*, No. 95–0565–IEG (BTM), 1995 WL 476251, at *7 (S.D. Cal. July 27, 1995).

Therefore, the Court finds that Harman has met the statutory and equitable requirements for permanent injunctive relief prayed for in the Complaint. *See Adobe Sys., Inc. v. Tilley*, No. 09–cv–1085–PJH, 2010 WL 309249 *6 (N.D. Cal. Jan. 19, 2010) (granting a permanent injunction on a motion for default judgment because, "[i]n light of Defendants' past infringement and their failure to appear in this action, injunctive relief is warranted").

## V.  CONCLUSION

For the reasons discussed above, the Court **GRANTS** Plaintiff's Motion for Default Judgment. (ECF No. 18.) The Court will issue a judgment.

**IT IS SO ORDERED.**

April 24, 2018

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**